IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                                                      CASE NO. 5:09-cr-14/RS

CHRISTOPHER ANTONIO OWENS
_____/

## ORDER

Before me is Defendant's Motion to Suppress (Doc. 44).

A suppression hearing was held on August 14, 2009, after which I denied Defendant's motion. Defendant subsequently plead guilty to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). This order details my findings of fact and conclusions of law.

### I.     Background

On November 6, 2008, Panama City Police Department plain-clothes Investigators Wesley Warren and Michael Brewer saw Christopher Owens driving in his vehicle. Warren and Brewer were familiar with Owens and his vehicle because they had been investigating him for over a year for suspected drug trafficking. Based on their investigation, they knew that Owens was a convicted felon.

Upon seeing Owens, Warren radioed into dispatch to check the validity of Owens' driver's license. Dispatch informed Warren that Owens' license was suspended for failing to pay child support. Consequently, Warren and Brewer called for a uniformed officer to conduct a lawful traffic stop of Owens. Corporal Richard Bryant pulled Owens over and Warren and Brewer followed to assist.

Owens was seated alone in the driver's seat of his car when Bryant made his initial contact. Brewer told Owens that he was under arrest for driving while his license was suspended and asked Owens to step outside his vehicle. Brewer then told Owens that the officers were going to search Owens' vehicle incident to arrest. At that point, before reading Owens his *Miranda* rights, Warren asked Owens if he had anything in his vehicle, such as weapons or drugs. Owens responded, "Yes, there's a gun in there."

While Owens stood without handcuffs on at the rear of his vehicle with Brewer, Warren searched the front seat area of the vehicle. Inside the center console, out of view, Warren found a loaded Ruger 9mm firearm that had a round in the chamber and the hammer cocked and ready to fire. Upon finding the loaded gun, Warren and Brewer placed Owens in handcuffs. Brewer then continued to search the rest of the vehicle and found a plastic bag under a jacket that contained a loaded Kahr .40 caliber firearm and a loaded Llama .32 caliber firearm. Subsequently, the officers placed Owens into Bryant's patrol car. While Brewer

was searching the vehicle, Owens' sister arrived on-scene and later drove Owens' car away.

On May 6, 2009, Defendant plead guilty to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On July 8, 2009, Defendant filed a motion to withdraw his plea (Doc. 39). In Defendant's motion, defense counsel admitted that he was "unaware" at the time of the change of plea hearing of the United States Supreme Court's ruling in *Arizona v. Gant*, 129 S.Ct. 1710 (2009), that was issued two weeks before the plea hearing. (Doc. 39, ¶ 3). As a result of this admission and other factors, I granted Defendant's motion. (Doc. 41). Subsequently, Defendant filed his motion to suppress (Doc. 44).

## II.    Pre- *Gant* Precedent

"[T]he general rule in the criminal context is that warrantless searches are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *United States v. Gonzalez,* 71 F.3d 819, 825 (11th Cir.1996) (internal quotation marks and citations omitted). One of those exceptions is for a search incident to a lawful arrest, *United States v. Bailey,* 691 F.2d 1009, 1018 (11th Cir.1982), which includes the right to search a vehicle occupied by the arrestee, *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864 (1981). Under that exception an officer may search a vehicle the arrestee has recently occupied even if the officer first makes contact with him after

he has exited the vehicle. *Thornton v. United States,* 541 U.S. 615, 617, 623-24, 124 S.Ct. 2127, 2129, 2132 (2004).

The Supreme Court in *Gant* expressed concern that *Belton* was being applied far beyond the underlying justifications for warrantless vehicle searches incident to arrest of a recent occupant – officer safety and preservation of evidence. *Gant*, 129 S. Ct. at 1718-19. The Court observed that *Belton* "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility that the arrestee could gain access to the vehicle at the time of the search." *Id.* at 1718. Eleventh Circuit precedent predating *Gant* was not an exception.

The decision in *United States v. LeCroy*, 441 F.3d 914, 925 (11th Cir. 2006) is an example of the Eleventh Circuit's approach to vehicle searches incident to arrest. In *LeCroy*, the defendant was stopped for having bald tires on his car and arrested for operating an unsafe vehicle. *Id.* Citing *Belton*, the court found that the police were "constitutionally permitted to make a contemporaneous search incident to the arrest, including a search of the passenger compartment of the car." *Id.* Other circuit opinions are consistent with *LeCroy*. *Gonzales*, 71 F.3d at 825 (officers lawfully arresting a car occupant may search the passenger area of the car as a contemporaneous incident of the arrest); *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993) ("when officers lawfully arrest an automobile

occupant, they may search the passenger compartment of the automobile as a contemporaneous incident of the arrest . . . ."); *United States v. Wilson*, 853 F.2d 869 (11th Cir. 1988) (upholding search incident to arrest for driving with suspended license); *United States v. Rollins*, 699 F.2d 530 (11th Cir. 1983) (expanding automobile exception to include airplanes). Consequently, the search in this case was wholly consistent with and supported by the Eleventh Circuit's precedent prior to *Gant*.

###    III.    Application of the Good-Faith Exception

"The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, but contains no [provision expressly precluding the use of evidence obtained in violation of its commands.'" *Herring v. United States*, 129 S. Ct. 695, 699 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185 (1995). There is, however, the judicially-created exclusionary rule that, when applied, excludes evidence obtained in violation of the Fourth Amendment from being used at trial. *Id.* The exclusionary " 'rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Herring*, 129 S. Ct. at 699 (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613 (1974). "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was

unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring*, 129 S. Ct. at 700.

In discussing the principles of the exclusionary rule, the Court stated that "[t]he extent to which the exclusionary rule is justified by . . . deterrence principles varies with the culpability of the law enforcement conduct." *Id.* at 701. Therefore, " 'assessment of the flagrancy of the police misconduct constitutes an important step in the calculus of applying the exclusionary rule.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 911, 104 S. Ct. 3405 (1984)). The Court further explained that " 'evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Herring*, 129 S. Ct. at 701 (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49, 107 S. Ct. 1160). As a result, the only police "abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." *Id.* at 702. Thus, the good-faith inquiry " 'is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all the circumstances.'" *Id.* at 703. (quoting *Leon*, 468 U.S. at n. 23, 104 S. Ct. 3405).

Based upon the principles of the exclusionary rule, I find it proper to apply the good-faith exception to a search justified under the settled case law of the

Eleventh Circuit, even though the law was later rendered unconstitutional by a Supreme Court decision. Just as there is no misconduct on the part of a law enforcement officer who reasonably relies on the mistake of a court employee in entering data, *Evans*, 514 U.S. at 15, 115 S. Ct. 1185, or the mistake of a legislature passing an unconstitutional statute, *Krull*, 480 U.S. at 349-50, 107 S. Ct. 1160, a police officer who performs an automobile search subsequent to arrest in reasonable reliance upon the settled case law of the United States Court of Appeals, even though the search is later invalidated by a Supreme Court decision, has not engaged in misconduct. *United States v. McCane*, No. 08-6235, 2009 WL 2231658 at 7-8 (10th Cir. July 28, 2009). As repeated by the Supreme Court in its good-faith exception cases, the exclusionary rule should not be applied to objectively reasonable law enforcement activity." *Leon*, 486 U.S. at 919, 108 S. Ct. 2218. Relying upon settled case law is objectively reasonable law enforcement behavior.

### IV.   Voluntary Statement

As an alternative to the good-faith exception, the government has urged me to deny Owens' motion to suppress because his statement was voluntary and gave the police probable cause to search his vehicle. The government argues that since Officers Warren and Brewer knew that Owens had a prior felony conviction, Owens' statement that he had a gun in his vehicle gave the police probable cause to

search for evidence that Owens was unlawfully in possession of a firearm. The government argues that even though Owens had not been read his *Miranda* rights, his admission that there was a gun in the car was voluntary and that the weapons should therefore not be suppressed. In support of this contention, the government relies on *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620 (2004). In *Patane*, the defendant was arrested for violating a restraining order. While being put under arrest, the arresting officer attempted to read the defendant his *Miranda* rights, but got no farther than the right to remain silent before the defendant cut him off, asserting that he knew his rights. *Id.* at 635, 124 S. Ct. 2625. The arresting officer did not complete the warnings, but instead asked about a gun that he suspected the defendant possessed. *Id.* After the officer repeatedly asked about the gun, the defendant finally admitted that he had one in his home. *Id.* The Court determined that under the facts presented, the defendant's statement about the gun was voluntary and that the "Self-Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a voluntary statement." *Id.* at 636.

The facts of *Patane* are distinguishable from the facts of Owens' stop, however. Unlike *Patane* where the officers attempted to give the *Miranda* warnings and the defendant asserted his familiarity with them before admitting to possessing a gun, the officers here never attempted to advise Owens of constitutional rights after putting him under arrest. Therefore, I am unable to

conclude that Owens' statement about possessing a gun was voluntarily given. *See United States v. Grossman*, 233 F. App'x 963, 966-67 (11th Cir. 2007) (stating the standard for determining voluntariness of a confession). Furthermore the majority found in *Patane*, "the Court requires the exclusion of the physical fruit of actually coerced statements . . . ." *Id.* at 644. Consequently, I cannot find that the officers had valid probable cause to search Owens' vehicle based on his involuntary statement.

## V.     Public Safety Exception

The government argues that Defendant's motion to suppress should be denied based on the public safety exception to the exclusionary rule. The public safety exception " 'allows officers to question a suspect without first [providing Miranda warnings] when necessary to protect either themselves or the general public.'" *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009) (quoting *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007)). The exception does not depend upon the subjective motivation of the questioning officers; the exception applies when "police officers ask questions reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 656, 104 S. Ct. 2626, 2631-32 (1984). It, however, does not apply to "questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 659, 104 S. Ct. 2633.

The government asserts that the police were justified in asking Owens if he had any weapons in his vehicle because weapons could injure the officers during their search. In support of this contention, the government cites *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008), in which the Eighth Circuit wrote, "'Our prior cases recognize[] that the risk of police officers being injured by the mishandling of unknown firearms or drug paraphernalia provides a sufficient public safety basis to ask a suspect who has been arrested and secured whether there are weapons or contraband in a car . . . that the police are about to search.'" *Id.* (quoting *United States v. Liddell*, 517 F.3d 1007, 1009-10 (8th Cir. 2008)). A review of the Eleventh Circuit's holdings related to the public safety exception reveals that the Eleventh Circuit, unlike the Eighth Circuit, requires more than mere risk of injury to a police officer. In fact, the Eleventh Circuit has only applied the public safety exception in narrow exceptions where the danger was readily apparent to the arresting officer: *Spoerke*, 568 F.3d at 1249 (where officer had pulled over vehicle and saw pipe bomb in plain sight, the questioning of the defendant was necessary "to discern the threat the bombs presented to the officer and the nearby public."); *Newsome*, 475 F.3d at 1225 (where officers entered a motel room with a man known to be armed and dangerous, "The officers reasonably believed that they were in danger, and they acted accordingly to protect themselves and other motel guests in making the arrest."); *United States v. Smith*,

322 F. App'x 876, 878 (11th Cir. 2009) ("It was reasonable for the officer to ask Smith about weapons to protect his own safety and that of others in the area based on Smith's agitation and his strong odor of alcohol."). Here, the contention that the officers believed they were in danger is belied by the fact that Owens had been moved away from his vehicle and it was not deemed necessary to handcuff him. It was not until the first firearm was found in the center console that Owens was placed in handcuffs, presumably because he was then more of a threat to the officers. The scenario presented in this case does not rise to the level of threat that the Eleventh Circuit has indicated is necessary for the public safety exception to apply. Consequently, I find that the public safety exception is inapplicable to this case.

## VI. Inventory Search

The government's final alternative theory as to why Defendant's motion should be denied is that the firearms would have inevitably been discovered during the inventory search of his vehicle. To be constitutional, inventory searches must be standardized and "not a surrogate for investigation . . . ." *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990). According to the Vehicle Towing/Impound Policy of the Panama City Police Department (Doc. 51-2), a vehicle may be towed for nine different reasons. The government claims that Owens' car was obstructing traffic and that it therefore needed to be towed. I do

not agree. It was obvious from the video shown during the suppression hearing that Owens pulled over to the side of the road when he was stopped and was not obstructing the flow of traffic. Furthermore, the police policy is to tow disabled vehicles that are obstructing the flow of traffic. Owens' car was not disabled as was made clear by his sister driving it away from the scene. Further, the government contends that because Owens had been arrested for driving with a suspended driver's license, he was no legally or physically able to move his vehicle. This may be true, but the arrest of the driver is not a standardized reason articulated in the Towing/Impound Policy that authorizes the police to tow a vehicle. Furthermore, contrary to the government's contention, there is nothing in the Towing/Impound Policy that ever *requires* the police to tow a vehicle. The Policy states that vehicles meeting certain criteria "*may* be towed at the request of officers of the Panama City Police Department . . . ." (Doc. 51-2 at 3) (emphasis added). Since the police did not follow their standard procedures, I cannot find that a valid inventory search was conducted. If I were to find this search to be a valid inventory search, I would be permitting the police to make an end-run around the Supreme Court's search incident to arrest standards. In future cases where the police had no probable cause to search a vehicle, they would simply inventory the vehicle as a means of searching the vehicle. This is not permitted.

## VII.  Conclusion

Defendant's Motion to Suppress (Doc. 44) is DENIED based solely on the good-faith exception to the exclusionary rule.

**ORDERED** on August 20, 2009.

<u>/S/ Richard Smoak</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**